## DOCHERTY v. ROBINS DRY DOCK & RE-PAIR CO.

Circuit Court of Appeals, Second Circuit.
May 6, 1929.

No. 258.

Silas B. Axtell, of New York City (Charles A. Ellis, of New York City, of counsel), for appellant.

Robert H. Woody, of New York City (J. Arthur Hilton and Alfred T. Tompkins, both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge. The complaint alleged that the plaintiff was employed as chief officer on board the steamship William Boyce Thompson while she lay in navigable waters alongside a dock in Erie Basin, that the defendant was engaged in the performance of a maritime contract to re-pair "divers and various parts" of said vessel, and that while the vessel was being repaired, and while plaintiff was using at defendant's invitation a ladder which led from the navigating bridge to the flying bridge, he fell and sustained serious injuries, due solely to the defendant's negligence in supplying a dangerous and insecure ladder. Diverse citizenship of the parties and plaintiff's freedom from contributory negligence were also alleged. The answer denied negligence by defendant, and alleged contributory negligence by plaintiff, and that, if negligence of any other person contributed, it was the negligence of a person for whom the defendant was not responsible.

The plaintiff's testimony shows that the vessel had been in dry dock for about six months, that the repairs were nearing completion, and that on the day of the accident she was lying in the slip outside defendant's dry dock. For four or five days prior to the accident plaintiff had been employed by the ship's owners to work upon her during working hours, his duties being to check stores which were being delivered, and to inspect repairs and report to the captain any defects which he observed. Workmen had been fitting a canvas cover, known as a weather cloth, around the rails on the flying bridge. The only means of access to the flying bridge was a temporary, handmade ladder, which led up from the navigating bridge. The vertical distance between the bridges was about 8 or 9 feet. During the noon hour on May 5, 1925, while the workmen were at lunch, plaintiff attempted to ascend this ladder to inspect their work on the weather cloth. He had been up the ladder the day before without mishap. At the time in question, he saw that the ladder was not fastened at the bottom, but he tested it with his hands and thought it solid, and it appeared to be lashed at the top to a stanchion. He proceeded to ascend, and, as he was about to step from the ladder to the bridge above, the bottom of the ladder slipped, and, the lashing at the top not being fast, the whole ladder "went on the run" from under him, carrying him with it to the deck of the navigating bridge below. In the fall he sustained substantial injuries.

It may be assumed that the court below was wrong in ruling as a matter of law that the plaintiff had shown himself guilty of contributory negligence. Such an error would be immaterial, unless there was evi-

dence for the jury on the question of the defendant's negligence. The difficulty with the plaintiff's case is the absence of any evidence to connect the defendant with the ladder or with the work which was being done on the flying bridge.

The defendant's answer admitted the allegation that it was repairing various parts of the vessel, but this is not an admission that it was doing all of the repair work; its contract with the owners was not introduced in evidence, and the plaintiff testified that he did not know for whom the men doing work on the top bridge were working. There is no testimony as to who placed the temporary ladder in position, or when or by whom it was lashed at the top, or how long the defect of its lashing had existed. Assuming, without decision, that such evidence might be dispensed with, if the defendant were shown to be in control of the ship and ladder (but compare Wynn v. Carlin, 135 App. Div. 795, 796, 120 N. Y. S. 208), there is no evidence that the defendant was doing all the repair work or was in exclusive possession of the vessel. We have scrutinized the record most carefully, and the only thing we can find which might tend to implicate the defendant with this particular work is a question by its counsel in cross-examination, as follows:

"Q. You waited, then, until after all the workmen of the dry dock company that was doing repairs had gone to lunch, and then you undertook to go up and feel that canvas and see if it was tight? A. I looked at that on arrangement with the foreman.

"Mr. Hilton: I move to strike that out as a conclusion.

"The Court: Strike it out.

"Q. I ask you if that is what you did after they went to lunch, after the men left the vessel, that you went up to feel of that canvas if it was tight? A. To see if it was properly done."

This can scarcely be deemed an admission by defendant's attorney that defendant's men were doing the work on the top bridge. The plaintiff had previously been asked whether "the men who were doing work on different parts of that vessel went off the vessel to lunch" when the whistle blew for the lunch hour. The subsequent question, which referred to "workmen of the dry dock company that was doing repairs," did not necessarily refer to men who were working on the top bridge rather than elsewhere on the vessel. On direct examination the defendant's counsel had objected to testimony as to work on the top bridge, on the ground that no connection with the defendant had been shown. Plaintiff's attention was thus called to the failure of his proof in this respect, and we cannot hold that the above quoted question on cross-examination is an admission which rendered proof by the plaintiff unnecessary.

Accordingly the judgment must be and is affirmed.